IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| First Liberty Institute,<br><br>        Plaintiff,<br><br>    v.<br><br>Department of the Air Force and the Air Force Reserve Command,<br><br>        Defendants. | CIVIL ACTION NO. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

On April 3, 2016, uniformed Airmen forcibly removed Oscar Rodriguez ("Rodriguez"), an Air Force retiree, from a retirement ceremony Rodriguez was invited to speak at, because he planned to deliver a patriotic flag-folding speech that mentioned "God." Rodriguez retained First Liberty Institute ("Plaintiff" or "First Liberty"), who submitted a complaint to the Air Force Reserve Command and the Department of the Air Force (collectively, "Defendants" or the "Air Force") claiming, *inter alia*, violations of his First, Fourth, and Fifth Amendment rights under the United States Constitution. In response to Rodriguez's complaint, the Secretary of the Air Force ordered the Air Force Inspector General ("IG") to review the propriety of the Air Force's actions against Rodriguez. On December 21, 2016, First Liberty submitted a request under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") to Defendants requesting the results of the IG's investigation. More than seven months—*210 days*—have passed since First Liberty submitted the FOIA request, yet the Air Force has failed to make a determination whether it will produce the requested records or claim any exemptions. First Liberty respectfully requests that

1

this Court order the Air Force to produce the wrongfully withheld records and preclude the Air Force from illegally hiding important information from public scrutiny.

## INTRODUCTION

1. This is an action under the Freedom of Information Act, 5 U.S.C. § 552, to order the production of the Report of Investigation into an assault on Rodriguez on April 3, 2016, at Travis Air Force Base, which Defendants have improperly withheld from Plaintiff and the public.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B).

3. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

5. First Liberty Institute is a nonprofit legal organization dedicated exclusively to protecting religious freedom for all Americans.  It is headquartered at 2001 West Plano Parkway, Suite 1600, in Plano, Texas.  Plaintiff also represents Oscar Rodriguez in connection with the April 3, 2016 civil rights violation and assault inflicted on Rodriguez.  Plaintiff is the requester of the records which the Defendants are wrongfully withholding.  Plaintiff has requested this information in order to know what relief, if any, Defendants intend to provide in response to the constitutional and physical injury Defendants inflicted on Rodriguez, and prompt release of the information is important because of the immediate public interest in the information.

6. The Air Force Reserve Command and the Department of the Air Force (collectively, "Defendants" or the "Air Force") are agencies of the United States within the meaning of 5 U.S.C. § 552(f)  and have possession of the documents that Plaintiff seeks.

## FACTS

A. *Uniformed Airmen Assault Mr. Rodriguez During a Private Ceremony*

7. Oscar Rodriguez is an honorably-retired Air Force veteran who served for thirty-three years. As a retiree, Rodriguez possesses an identification card that authorizes him to enter federal military installations such as Travis Air Force Base.

8. Both while in the Air Force and as a retiree, Rodriguez has regularly performed patriotic flag-folding speeches at military retirement ceremonies and civil and patriotic events. Rodriguez's flag-folding speech generally follows a script, and includes mention of the word "God" approximately six times. For example, Rodriguez's script concludes: "Let us pray that God will reflect with admiration the willingness of one nation in her attempt to rid the world of tyranny, oppression, and misery. It is this one nation under God that we call, with honor, the United States of America. God bless our flag. God bless our troops. God bless America."

9. After observing Rodriguez deliver one of his speeches at a separate military retirement ceremony, Master Sergeant (MSgt) Chuck Roberson, U.S. Air Force, personally requested Rodriguez deliver the same speech at his own retirement ceremony that was scheduled to occur on April 3, 2016. But when MSgt Roberson's unit commander discovered that Rodriguez's flag-folding speech would mention "God," he attempted to prevent Rodriguez from attending.

10. Roberson and Rodriguez tried to clear the speech through higher authorities at Travis Air Force Base, even offering to place notices on the door informing guests that the word "God" would be mentioned, in the event that any attenders would take offense to the term. They never received a response.

11. Roberson made clear to Rodriguez that his strong desire was for Rodriguez to perform the flag-folding speech. Roberson asked Rodriguez to attend his retirement ceremony,

and if Rodriguez heard the unique music that traditionally accompanies his flag-folding speech, Rodriguez should interpret that as the signal that he was clear to perform the speech.

12. On the date of Roberson's retirement ceremony, Rodriguez attended and sat in his assigned seat, just as Roberson requested. Upon hearing the music that accompanies his flag-folding speech, Rodriguez stood up and moved to the stage to perform the flag-folding speech. At that moment, a uniformed Airman approached Rodriguez and warned him to call off the planned speech. When Rodriguez began speaking, the uniformed Airman, joined by approximately three or four other uniformed Airmen, physically assaulted Rodriguez and forcibly removed him from the ceremony. Travis Air Force Base officials then directed Rodriguez to immediately leave the base.

13. The incident was captured on video recording from two different perspectives. The disturbing incident also attracted the attention and scrutiny of the national news media.

B. *Air Force Orders Investigation*

14. On June 20, 2016, Rodriguez submitted a letter to Defendants alleging seven distinct legal violations resulting from the incident, including violations of the First, Fourth, and Fifth Amendments to the U.S. Constitution. In response, on June 22, 2016, then-Secretary of the Air Force Deborah Lee James ordered the Air Force Inspector General to review the Air Force's actions against Rodriguez by investigating the April 3rd incident.

15. On September 9, 2016, Gregory Girard, the Deputy Director for Administrative Law, Office of the Judge Advocate General of the Air Force, provided Rodriguez with a copy of the IG's Report of Investigation ("ROI"). The ROI was limited in scope to address only Rodriguez's First Amendment claim, but it referenced a separate investigation that the Security Forces Squadron, 60th Air Mobility Wing, conducted at Travis Air Force Base. The Security Forces Squadron investigation purportedly addressed Rodriguez's Fourth and Fifth Amendment

claims. Defendants did not provide the Security Forces Squadron ROI ("Security Forces ROI") to Rodriguez.

C.   *Plaintiff Requests the Results of the Investigation*

16.   On December 21, 2016, Plaintiff First Liberty Institute, acting on its own behalf and on behalf of Rodriguez, requested the results of the Security Forces ROI—which Defendants had referenced, but did not produce, *see supra* ¶ 15—under the Freedom of Information Act.

17.   Plaintiff used the Air Force's online form to submit the FOIA request. A copy of the Air Force's automated response to Plaintiff's request is attached as Exhibit A. A copy of the Air Force's March 24, 2017 letter acknowledging receipt of Plaintiff's December 21, 2016 FOIA request, which also includes the contents of Plaintiff's request, is attached as Exhibit B.

18.   Specifically, Plaintiff requested the "complete 60 AMW/SFS Report of Investigation (ROI) [Security Forces ROI] relating to allegations of assault by members of 349 AMW and/or 749 AMXS during the retirement ceremony of MSgt Charles Roberson, USAF (Ret) on 3 April 2016 at Travis AFB." Plaintiff further explained it was requesting the results of the Security Forces ROI that Defendants had previously referenced, but failed to produce. *See* Ex. B (the "requested ROI is referenced as Exhibit 13 in the SAF/IG ROI concerning Travis AFB 3 April 16 Retirement Ceremony, dated July 2016."). Plaintiff stated that the date range of the record search was from April 3, 2016 to December 21, 2016. *See* Ex. B.

D.   *Air Force Refuses to Comply with FOIA*

19.   Under FOIA, the Air Force was required to make a "determination" within twenty days after the receipt of Plaintiff's request, unless it requested an extension. *See* 5 U.S.C. § 552 (a)(6)(A)(i) ("Each agency, upon any [FOIA] request for records . . . shall . . . determine within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any

such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor," and of "the right of such person to appeal to the head of the agency" any "adverse determination.").

20. Under 5 U.S.C. § 552 (a)(6)(B), an agency's time limit for making a determination can be extended in "unusual circumstances," but only "by written notice to the person making such request setting forth unusual circumstances for such extension and the date on which a determination is expected to be dispatched." *Id.* Moreover, "[n]o such notice shall specify a date that would result in an extension for more than ten working days." *Id.*

21. The Air Force did not make a determination by its deadline of January 23, 2017, twenty working days after receipt of Plaintiff's request.[1]

22. Nor did the Air Force request an extension of the twenty-day deadline to make a determination under 5 U.S.C. § 552 (a)(6)(B).

23. Rather, on March 24, 2017—*ninety-three days* after Plaintiff submitted its FOIA request—the Air Force responded to Plaintiff's request for the first time. *See* Ex. B. The Air Force noted that Plaintiff's FOIA request was "received," but did not make a determination. *See id.* The Air Force did not specify whether the Air Force would produce the documents, withhold the documents, or claim any exemption. *See id.*

24. The Air Force's letter of March 24, 2017 does not constitute a proper request for an extension of time to make a determination. Though the letter stated that the "[t]arget date to respond is 14 Apr 2017," it did not "se[t] forth the unusual circumstances for such extension," as required by 5 U.S.C. § 552 (a)(6)(B). *See* Ex. B. Moreover, if it was intended to be a request for

---

[1] Although the Air Force sent an automatic confirmation of receipt to Plaintiff on December 21, 2016 immediately after the FOIA request, *see* Ex. A, automatic confirmation emails do not constitute a "determination." *See Citizens for Responsibility and Ethics in Wash. v. Federal Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

an extension, it was far beyond the date required for compliance, and the "target response date" of April 14, 2017, was over a hundred days after Plaintiff's request—far longer than the maximum ten-day extension permitted by 5 U.S.C. § 552 (a)(6)(B). *See* Ex. B.

25. To this day, the Air Force has not made a "determination" under FOIA as to whether it will release, withhold, or partially release information responsive to Plaintiff's FOIA request.

26. To this day, the Air Force has not produced any records to Plaintiff in response to its FOIA request.

27. This matter is ripe for review. Typically, requesters of information must exhaust their administrative remedies to challenge an adverse determination, but here, the Air Force has never made a determination, so the need to "exhaust administrative remedies" was never triggered. *See Citizens*, 711 F.3d at 188. "[I]f the agency has not issued its 'determination' within the required time period, the requester may bring suit directly in federal district court without exhausting administrative appeal remedies." *Id.* at 182. "It is not enough that . . . the agency simply decide to later decide." *Id.* at 186. FOIA explains that a requester is "deemed to have exhausted . . . administrative remedies" if an agency "fails to comply with the applicable time limit provisions." 5 U.S.C. § 552 (a)(6)(C)(i). Further, Defendants acknowledged Plaintiff's "right under FOIA to sue or initiate litigation" on June 13, 2017. *See* Exhibit C (June 13, 2017 email from Air Force to Plaintiff). To hold otherwise would allow an agency to simply stonewall its disclosure obligations, which is what Defendants have done here.

28. Plaintiff has a right of access to the requested information under 5 U.S.C. § 552(a)(3), and there is no legal basis for Defendants' denial of such access.

## COUNT I

**Wrongful Withholding of Agency Records In Their Entirety, 5 U.S.C. § 552**

29. Paragraphs Nos. 1 through 28 are incorporated by reference.

30. Plaintiff requested the records under FOIA.

31. Plaintiff has constructively exhausted any administrative remedies, or alternatively, the administrative exhaustion requirement was never triggered, since Defendants have never made a determination, produced any responsive documents, or properly requested an extension.

32. Defendants have wrongfully withheld records requested by Plaintiff pursuant to 5 U.S.C. § 552.

## REQUEST FOR EXPEDITED PROCEEDINGS

33. Paragraph Nos. 1 through 32 are incorporated by reference.

34. Plaintiff initially requested the agency records at issue approximately seven months ago.

35. Plaintiff has requested this information in order to know what relief, if any, Defendants intend to provide in response to the injury Defendants inflicted on Rodriguez, and prompt release of the information is important because of the immediate public interest in the information.

36. "Good cause" therefore exists for expediting these proceedings pursuant to 28 U.S.C. § 1657(a) and 5 U.S.C. § 552(a)(4)(C).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests this Court award the following relief:

(1) Expedite this proceeding;

(2) Enter an order and judgment requiring the Defendants to produce, by a date certain, any and all records responsive to the FOIA Request;

(3) Enter an order and judgment permanently enjoining Defendants from continuing to withhold any and all records respective to the FOIA Request;

(4) Award attorney's fees and costs under any applicable statute or authority, including 5 U.S.C. § 552(a)(4)(E);

(5) Order any other relief that this Court in its discretion may deem just and proper.

Dated: July 27, 2017

Respectfully submitted,

 /s/ *Elizabeth Viney*
Elizabeth Viney
TX Bar No. 24073134
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Avenue, Suite 1100
Dallas, Texas 75201
Telephone:  (214) 698-3249
Facsimile:  (214) 571-2934
*eviney@gibsondunn.com*
LEAD COUNSEL

Clyde M. Siebman
TX Bar No. 18341600
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
300 N. Travis Street
Sherman, Texas 75090
Telephone:  (903) 870-0070
*clydesiebman@siebman.com*

Elizabeth S. Forrest
TX Bar No. 24086207
SIEBMAN, BURG, PHILLIPS & SMITH, LLP
4949 Hedgcoxe Road Ste. 230
Plano, TX  75024
Telephone: (214) 387-9100
*elizabethforrest@siebman.com*

Hiram Sasser
TX Bar No. 24039157
FIRST LIBERTY INSTITUTE
2001 W Plano Pkwy Suite 1600
Plano, TX 75075
Telephone: (972)-941-4444
hsasser@firstliberty.org

COUNSEL FOR PLAINTIFF FIRST LIBERTY INSTITUTE